**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | | |
|---|---|---|
| Franklin Dash, Debbie Dash, | ) | |
| | ) | Civil Action No. 5:12-cv-02732-JMC |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Selective Insurance Company of South Carolina, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiffs Franklin and Debbie Dash (collectively "Plaintiffs") filed this action alleging breach of contract and bad faith by Defendant Selective Insurance Company of South Carolina ("Defendant") for failure to pay the full replacement and repair costs stemming from a house fire.  (ECF No. 1.)  This matter is before the court on Defendant's Motion for Summary Judgment.  (ECF No. 79.)  For the reasons set forth herein, the court thereby **GRANTS IN PART AND DENIES IN PART** Defendant's Motion (ECF No. 79).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2011, a fire damaged Plaintiffs' home in St. Matthews, South Carolina. (ECF No. 1 at 1.)  Per Plaintiffs' homeowners insurance policy with Defendant, Defendant made payments totaling approximately $103,000—approximately $78,000 to Plaintiffs for repair and replacement and approximately $25,000 directly to companies for repair and cleaning services. (ECF No. 96 at 2.)  On October 13, 2011, Defendant mailed to Plaintiffs a "Policy Release and Sworn Statement in Proof of Loss" for Plaintiffs to sign and return, upon receipt of which Defendants would issue a final payment of $7,174.20.  (ECF No. 96-1 at 5.)  Plaintiffs refused to sign the release because they allege "their home was not completed and their personal property

1

had not been completely replaced and restored." (ECF No. 96 at 3.) On October 18, 2011, the parties entered into the appraisal process in an attempt to resolve the claim. (ECF No. 79-1 at 6.) However, on May 7, 2012, Plaintiffs sent Defendant a letter advising Defendant they no longer wished to proceed with the appraisal process. (ECF No. 96-1 at 16.)

Plaintiffs filed their Complaint on September 20, 2012, alleging breach of contract and bad faith by Defendant. (ECF No. 1.) Defendant filed a Motion for Summary Judgment on January 15, 2015. (ECF No. 79.)

## II. LEGAL STANDARD AND ANALYSIS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision,* 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties'

differing versions of the truth at trial." *Anderson,* 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore,* No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

To prove breach of contract, a plaintiff must show (1) the existence of a binding contract between the parties, (2) a breach of the contract by the defendant, and (3) damages caused by the breach. *Fuller v. Eastern Fire & Cas. Ins. Co.,* 124 S.E.2d 602, 610 (S.C. 1962). "[T]here is an implied covenant of good faith and fair dealing in every insurance contract 'that neither party will do anything to impair the other's rights to receive benefits under the contract.'" *Tadlock Painting Co. v. Maryland Cas. Co.,* 473 S.E.2d 52, 53 (S.C. 1996) (quoting *Nichols v. State Farm Mut. Auto. Ins. Co.,* 306 S.E.2d 616, 618 (S.C. 1983) *superseded on other grounds.*). "An insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." *Dowling v. Home Buyers Warranty Corp., II,* 400 S.E.2d 143, 144 (S.C. 1991) (citations omitted).

The parties do not dispute the existence of a binding contract between them. As Defendant notes, the crux of this case is "the scope and cost of the repairs and cost of the replacement of certain personal property." (ECF No. 79-1 at 1.) Plaintiffs' policy states that Defendant "will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than… [t]he necessary amount actually spent to repair or replace the damaged building." (ECF No. 79-1 at 9.) Further, for personal property, the

policy states Defendant will "pay no more than the least of the following amounts: (1) Replacement cost at the time of loss without deduction for depreciation; (2) The full cost of repair at the time of loss; (3) The limit of liability that applies to Coverage C, if applicable." (*Id.* at 10.)

Defendant argues Plaintiffs "have produced no evidence that any of the repairs or damage to personal property they now claim [Defendant] failed to pay were reasonable, necessary, or caused by the fire." (ECF No. 79-1 at 13.) However, Plaintiffs provide several documents of communications with Defendant regarding additional requests for mattress replacement, additional painting, and other repairs and replacements. (*See* ECF No. 96-6.) Further, Plaintiffs provide documents outlining several supplemental requests made during the repair process to which Defendant either acquiesced or agreed to compromise. (*See* ECF No. 96-7.) Although Defendant argues there is no evidence any refusal by Defendant to pay repairs or replacements *it felt was required* under the policy, Plaintiffs provide evidence of multiple items *they felt were necessary* to fully and properly repair the damage caused by the fire. At the core, this dispute is a disagreement over the extent of coverage afforded by the policy. A reasonable juror could find the policy obligated Defendant to pay for Plaintiffs' requests in order to fully repair Plaintiffs' home after the fire, and that a failure to pay constituted a breach of the policy. Further, a reasonable juror could find that Plaintiffs suffered damages in the form of out-of-pocket expenses Plaintiffs allege they incurred as a result of Defendant's failure to pay additional funds. (*See* ECF No. 96-11.) Thus, summary judgment is denied as to Plaintiffs' breach of contract claim.

With regard to Plaintiffs' bad faith claim, a reasonable juror could not find "there was no reasonable basis" to support Defendant's coverage decision. Plaintiffs argue "Defendant also

failed to provide reasonable explanation and basis when denying or making a compromise offer of claim settlement." (ECF No. 96 at 21.) However, Plaintiffs argument rests on Defendant's failure to pay what Plaintiffs allege is required under the policy: "[Insurance adjustor Randy] Eichhorn testified that there were communications between the Plaintiffs and the contractors that lead [*sic*] to disputes about the full replacement and loss of use. Specifically, Mr. Eichhorn testified… that he did not paid [*sic*] for the full amount of the damages by the house fire but rather paid what the estimated amount that [Plaintiffs'] contractor submitted. *Plaintiffs argue that the estimate was not sufficient to complete the work and pay for the damaged personal property*." (ECF No. 96 at 21 (emphasis added).) Just as in *Stevenson v. Allstate Ins. Co.,* "nothing in the record suggests that this was the result of anything other than a good-faith dispute about the extent of coverage." 2012 WL 1986444, at *5 (D.S.C. June 4, 2012).

Indeed, the record shows many instances of Defendant explaining to Plaintiffs that certain requests were not covered under the policy. In an entry from Defendant's Claims Inquiry System printout, provided by Plaintiffs, Adjustor Eichhorn noted, "Mr. Dash wants the entire roof replaced due to the [shingles] matching issue. *Explained that the policy pays for damaged property only, not to match.* After 45 minute conversation, I agreed to replace the front side of the roof. He is not in agreement w/ this solution." (ECF No. 96-4 at 19 (emphasis added).) The Claims Inquiry printout notes other compromises and increases in coverage allowance, as well, including: an agreement by Eichhorn to replace Plaintiffs' refrigerator, which was damaged due to mold from spoiled food and not directly from the fire, and a further agreement to increase the allowance for the refrigerator from $822 to $1500 (*id.* at 15-16), and an agreement by Eichhorn to completely replace Plaintiffs' pool table after initially offering to only replace the felt and rails on the table (*id.* at 14). Rather than demonstrate an unreasonable refusal by Defendant to pay

5

under the claim, therefore showing bad faith, the record demonstrates that Defendant not only explained the limits of the policy's coverage to Plaintiffs, but was willing to compromise on various requests, sometimes providing coverage beyond the policy's provisions.  As such, no reasonable juror could find that Defendant acted unreasonably, and therefore in bad faith, when denying Plaintiffs' requests for additional payment.  Therefore, summary judgment is granted as to Plaintiffs' bad faith claim.

## III. CONCLUSION

Based on the aforementioned reasons, it is therefore ordered that Defendant's Motion for Summary Judgment (ECF No. 79) is **GRANTED** as to Plaintiffs' bad faith claim and **DENIED** as to Plaintiffs' breach of contract claim.  This action will go forward on Plaintiff's breach of contract claim only.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

May 19, 2015
Columbia, South Carolina